The next case on the calendar is 21-35370, Menges v. Knudsen. Let's start with a sound test. Counsel, can you hear us okay? Yes, Your Honor. Can you hear me? I can. Yep. Okay. We're okay. We'll be just a minute. Counsel, at the council table, can you see opposing counsel okay? Okay. It's a little awkward to do this by hybrid approach, but... We just have to have the background noise stop before it... Okay. So we don't have a problem with the recording. So it'll just be one more second for those of you who are wondering. Thank you. All right, we're ready to hear your argument. Thank you, Your Honors. It may have pleased the court. David Dewhurst on behalf of the state defendants. I intend to reserve about three minutes and I'll keep an eye on the clock. Okay. So like 30 other states, Montana employs a reciprocity statute for sex offender registration. When someone moves to Montana, they have to register as a sex offender if they were required to register as a sex offender in another state following a conviction. This law doesn't probe the underlying facts and circumstances of an out-of-state conviction. It merely requires you to register here if you had to register there. This simple, non-discriminatory provision is an essential component of our public safety program. It captures nearly half of all of Montana's registries. But the district court considered this provision facially discriminatory in intent and application and deemed it unconstitutional as applied to Mangus. This unlikely conclusion was driven by a fallacious theory of attenuated statutory incorporation. And that fallacy ignored the law's text and structure and it dominated every component of the district court's analysis. In short, the decision was wrong and this court should reverse it. It's worth making one quick observation up front. If this case never existed, Montana law right now would not require Randall Mangus to register. Once the Idaho federal court enjoined his requirement to register there, Montana law ceased to require it here. That is how our law operates, which proves what we've argued all along. Mangus may not like Montana's registration law, but his grievance, if any, lies with Idaho's laws. So with the court's permission, I'll first address the district court's incorporation fallacy, and then I'll explain why it erred in concluding that Mangus succeeded on each of his merits claims, substantive due process, equal protection, and its Montana right to privacy claim. So first, the district court's incorporation analysis was simply wrong. 36 times in his brief, Mangus claims that Montana requires him to register as a sex offender for having gay sex, or that it criminalizes him or penalizes him for being gay. But there's no reading of our law that gives you that. But can I ask a question? What does the actual registration say? What appears on the public face? It's similar to what appears in other states. It's basic facts about the conviction. Right, so it says on it that he was convicted of a sex offense. That's correct. Well, that's the predicate for being convicted. Why doesn't he get to look through the registration analysis and say they're portraying me as having committed a sex offense, not just as having to register somewhere else. So I get to look at what the sex offense is and look at that. It's something that is constitutionally protected. They're representing to the world that I did something that was actually constitutionally protected to do. That's what the registration actually says. The form, what appears to the public. Well, Your Honor, that was certainly something that convinced the district court. In fact, he was so convinced that he concluded that our law was discriminatory in intent as well. He said he didn't have to find that because it was facially discriminatory. But I'm simply challenging your notion that he doesn't have a problem with Montana representing as a sex offender. He does. That's what Montana is doing, representing that he's a sex offender. Well, Your Honor, he pled guilty to a sex offense in Idaho. I understand that, but this just deals with the question of whether we look at that or, as your suggestion, we just look at it all as a black box. I'm not sure it's a black box, but I think what the district court did was unprecedented in terms of the chain of attenuation that he followed in order to invalidate Montana's law. Unprecedented? Really unprecedented? There's no other example that you can think of like the Windsor case where the United States Supreme Court said there's a baked indiscriminatory other statute that gets incorporated? Really? No, Your Honor, and we cited these cases and discussed them in our briefing. I mean, the language by itself is nondiscriminatory, and it speaks for itself, but perhaps, as you note, the best evidence is what the statute doesn't say and doesn't do. It doesn't contain facially discriminatory classifications or restraints like the don't ask, don't tell policy in the Witt case. It doesn't cross-reference other Montana statutes that contain unlawfully discriminatory classifications like what the Bassett court found in Michigan. It doesn't use benign language. But it results in a representation to the world that this person committed a sex offense, and he's a sex offender, and he's dangerous, and that's why we're telling you this. I mean, the rationale for doing this at all is that this is a dangerous person in some way. Well, the rationale for our program is that those who are convicted of sex offenses in other states are registered automatically when they move to Montana. Because they're dangerous. Yes, it's a public safety program. Wait, can I ask you to drill down on something that is not clear to me from the briefing, and this is a little bit different between Montana and Idaho. You argue that it is the registration statute, of course, that is being challenged, and that it would be burdensome for Montana to have to do anything to sort of look into the statute. But for some of these out-of-state statutes, like the one we're talking about here, it is a strict liability offense. There's nothing by way of intent required. And my question really is, on the back end, it seems to me Montana is doing some looking to decide what's going to be required by way of the person who is on the list is registered. Is that not right? Is Your Honor speaking about the risk-level designation that Montana sometimes does? Yes. And that's not an across-the-board, one-size-fits-all. They're digging down, to some extent, to the facts and circumstances of the individual convictions, aren't they? Well, only if they actually take the steps necessary to assign a risk-level designation. About half of all Montana registrants don't have one. The risk-level designation automatically happens for those who are convicted of Montana sex offenses. That happens in the sentencing process. So you're doing that anyway? Is that a yes, you're doing that anyway? No, we do not do that with most out-of-state registrants who move into the state of Montana. But you're doing it for the people who are convicted within Montana. That's correct. And how hard would it be to look for out-of-state people, out-of-state convictions, to simply look at the elements, if you really did just look at the elements? It seems to me that would be pretty simple. Well, actually, Your Honor, I think it's actually quite difficult. Why? Well, first of all, we're a small state, and we simply don't have the resources to undertake the thousands of individualized assessments of each individual's foreign conviction. Well, Idaho does do it, right. Well, that's true, and Idaho may have more resources to commit to this than the state of Montana. But do you agree that it would just be a matter of looking at the elements? No, Your Honor, I don't think so. And I think that's particularly true with the crime against nature statute because unlike the way things are going. Idaho argues they just look at the elements for the crime against nature statute. Yeah, I'm not sure that that's how Montana does it. In fact, I don't think it is. You said they don't do it at all. No, Your Honor. One of the things they do in their reasonable equivalency analysis, which is the alternative path to having folks moving into Montana register, is they go out and they get the court records, and they look at the facts underlying the conviction, and they look at the elements. They look at the entire situation, and then they make a determination. That raises a whole other host of problems because the registration statute only requires you to be registered based upon what you've been convicted of, right? The reasonable equivalency analysis exists so that if there's not an exact fit, someone in the state of Montana is making a judgment call that that foreign conviction is close enough to one of our registrable offenses that it should require registration. Now I'm really confused. You said you don't do that, but now you're saying sometimes you do do it. We're talking about a couple different things. There are two different paths where people who move into the state of Montana are required to register. One is the path that Mr. Mangus challenges here. That is simply if you're convicted in another state and that state requires you to register, then you have to register here. That takes no view of the facts or elements of the underlying conviction in the other state. The other avenue that the state has available is that it can do a reasonable equivalency analysis. It can look at your convictions in other states, and it can determine whether even if you weren't required to register there, you must register in Montana because your offense was close enough to one of the offenses Montana has determined is registrable. When does that path get used? It's most often with federal convictions or convictions in Indian country and sometimes in states because the SORNA offices in different states do communicate when offenders relocate. Those things are put on our radar. If someone isn't required to register under the reciprocity trigger that's at issue in this case, then sometimes our staff goes through this analysis. Back to the original question on this. The reason why even if we had unlimited resources to throw at this, it wouldn't protect the public safety program is because obtaining out-of-state court records can take years. In some cases, they never come at all. Mr. Dooler, I'm a little confused as well. Are you saying that it is the title of the statute of conviction that you look to first, and if you don't recognize that title, then you have to dig deeper and figure out what the elements are of that offense in the jurisdiction where the conviction was suffered? Your Honor, let me first note that this analysis is not present in this case. I understand that, but we got into this confusion about levels, and I have always understood levels of offenders to be driven by the severity of the sex offense so that a forcible rape results in a level one offender designation. You may very well have to go deeper than the elements of the crime of conviction in order to determine from the factual record what the circumstances were that resulted in a rape conviction. Again, we're talking about two different things. One is the two mechanisms to require someone to register, and the other is the process by which the state could undertake a process, go to a local court, and have a risk-level designation assigned to someone who doesn't have one. There's no evidence in this case that Mr. Mingus ever had a risk-level designation. No, we understand that. That's a different point. Can I ask you to assume for the moment that we, like the district judge, are going to consider the underlying crime for which he was required to register and address the substantive due process and equal protection arguments substantively? Otherwise, we're never going to get to them. What was the question, Your Honor? The question is, do you want to address the actual merits analyses of the district court with regard to the substantive due process and equal protection arguments, assuming a look-through, which I fully understand your position is we don't do that. Let's assume for the moment that we do. Sure. And to that point, I just want to note that that look-through analysis which is unprecedented. There's no case out there where this has been done before, where you have one neutral statute that looks to a neutral statute in another state, and then you're looking at a conviction statute behind that, and you're determining there's a problem there. And through that, you're imputing discriminatory application all the way. You don't want to address the issue. Do you want to read to the merits, please, so you're really almost out of time? Absolutely. Absolutely. The fact is, Your Honor, our statute does not implicate a liberty interest. The fact of registration as the Supreme Court and manifold other courts in the country have held do not inflict injuries that don't survive rational basis, that don't even survive heightened scrutiny. I mean, these injuries, according to the Supreme Court, are collateral consequences of a valid regulation. The registration and the notification portions of our program, all they do is republish already public truthful information. And registration alone, the Third Circuit and other courts have held. But they require the individual to continue to register every year. And are there statutory collateral consequences as well in terms of where he can live or in jobs or anything like that? Well, Mr. Menges makes some very thin injury claims about the burdens of registration. No, I'm asking you whether there are statutory or regulatory limitations as a consequence of the registration. No, there are not, not in Montana. In fact, the Montana statute, the registration statute, doesn't keep him from doing anything. It doesn't keep him from engaging in the activity protected by Lawrence or Obergefell. All it does is put truthful, already public information. Wait a minute, so there's no restriction on where he can go or where he can live or the extent to which he must report in? Isn't there a fee he has to pay? There's nothing? Is that really your argument? In some cases, there is a fee that someone moving in from out of state would have to pay if they didn't have any psychosexual evaluations in their state of conviction. If they do have those, they need to provide those to the state of Montana when they do move into the state. If they don't, then at their expense they have to get that psychosexual evaluation. But importantly, they don't have to submit that. It only needs to be submitted if the local attorney, the county attorney in that area, or the attorney general requests it for the purpose of petitioning a court to assign a risk-level designation. And at that point, then, can restrictions be placed on not living within 500 feet of a school or playground or that sort of thing? Or does that consequence flow from the fact of registration? Yes, I think that consequence flows from the fact of regulation. I don't think there are specific restrictions placed on individuals in Mr. Mangus's position. I was only able to address this. I don't understand your answer. Let me put it this way. In this case, there's no evidence that any additional restrictions were put on Mr. Mangus other than his obligation to check in and register on a timely basis. So unlike Idaho, he's not forbidden from living within 500 feet of a school or children's playground or a city park? I can check on that and address it in just a moment. But to my knowledge, there's no evidence in this case that any of those restrictions ever attach to Mr. Mangus. But isn't he also restricted from certain types of job classifications such as a child care center or that sort of thing? Again, Your Honor, he hasn't presented any evidence that he's tried to get those types of jobs. That's not the question. The question is, this is the question I asked you several minutes ago. Are there other statutory and regulatory consequences, whether they've been applied to him or not, as a consequence of the registration? The answer seems to be you don't know. There are no consequences that impede his liberty interest as articulated by Lawrence or Obergefell. We're not suggesting that it would prevent him from engaging in sexual activities, sir. We're not suggesting that.  And which consequences flow only if he's given a risk designation? Right. And to my knowledge, all I can answer for you right now, I can check on this while my friend is speaking, but all I can say now is that none of those restrictions have appeared in this case. None have been pledged. And so that's not something we have directly. So then he is now appearing on a public website for the purpose of informing people that he essentially is a dangerous person. Is that not the reason, the rationale for having him on that website? That's the reason individuals are listed on the sex offender registry. That's correct. May I ask if it's – I assume, I guess it doesn't say this, that this is a publicly available website. Is that right? So any future employer could look at it? Yes? Any future landlord could look at it? That's correct. Okay. That's correct. And the information that he was convicted of years ago in Idaho would otherwise not – you'd have to actually affirmatively go look for it. It wouldn't be easy to find, right? I'm not sure I got that question. So there's no reason to think anybody would do it except that this is meant to be an easy way because the state wants to notify people that this is a dangerous person. That's essentially what the sexual registration form – these websites are about. That's correct. It mirrors the federal program for federal and military sex offenders as well. All right. So the question then is – so Montana is doing something additional to this person, which was not imposed on him directly by his conviction. It is affirmatively taking a step that additionally injures him, and the question is why isn't that tied to the substitute process problem identified in Lawrence and to the equal protection analysis that the district court engaged in? So you're talking about notification as distinct from registration, the fact that we put this information on – Well, as a – I mean, that is what – one of the main things the registration does. So, yes. Right. So essentially that's the only injury that Mr. Mangus complains about is sort of the stigma associated with being listed as a sex offender. Again, we don't think that this implicates those interests because – Counsel, counsel, could you get to the question, please? You're way over time. Could you get to the question, which really asks you to – why are those not implicated if you go to the substitute process and equal protection analysis? Absolutely, Your Honor. On the equal protection analysis, I mean, this – the statute itself only regulates one type of person. No one else is captured by it. It doesn't turn on the sex of the victim. It doesn't turn on the type of sexual activity that gave rise to the out-of-state conviction. It's not like the male-female disparities in prison property allotments that was an issue in the first – It's not – it's probably not a male-female disparity, but it's a disparity based on the kinds of sex engaged in, right? And it's at least subject to – Not our statute. I'm sorry, what? Not our statute, Your Honor. Well, now you're backing up again. I mean, we're asking you to – Assume we're looking through. Assume we're looking through. Okay. Assume we're looking through. And it does seem to me that Idaho's got this distinction between whether or not – as long as it's consensual sex, Idaho's crime against nature conviction has never been imposed for any heterosexual activity. Isn't that right? Well, I don't think so, Your Honor. In 2020, there was a case – I can't find one. I can't find one. Gomez-Alas. Yeah, that's not – that's a forcible rape case. I'm talking about consensual sex. Where has Idaho ever imposed this crime against conviction and found a conviction for consensual sex? Well, Your Honor, so here I think is – here is one of the nubs of the issue. In both the equal protection and the substantive due process claims. Again, what the court is doing is he's reaching out and he's assuming that Mangus is correct. He's finding that Mangus did engage in protected activity and was convicted for it. And he's then saying that the registration – Well, he's got a pretty good basis for that assumption, right? He's got a crime of conviction that's a strict liability offense, and he's got Lawrence. But I think one of the areas where he abused his discretion was reaching through and attacking those convictions and attacking Idaho's registration requirement without Idaho being present in the case. Okay, so I really appreciate that, meaning I get it. We've read it. But just for purposes of argument, we're asking you to assume that we are looking through. And so Judge Berzon's question is, these harms that are this public notification that's going to be available to employers and to landlords, why is that not a protected – why does that not implicate protected interests? Well, until Mr. Mangus actually attacks his conviction as something that was constitutionally protected, the state of Montana has to be able to use this program. With Mr. Mangus, with anybody else. And so what the Supreme Court – Just to clarify a point, although you made a heck argument in the district court, you're not making one here. You didn't make a heck argument here. What you just said sounded like a heck argument, but it's not in the briefs. Well, I think it's notable and it's important that – It's not in the briefs, is that right? And it's not been raised here, am I right? We did not appeal that issue. That's correct. But as the Court well knows, it is interlaced with our incorporation argument, which is the primary argument, the threshold argument. But you didn't even cite heck in your brief. It's not cited. That's correct. Okay. But again, that's because we have a facially neutral statute that we rely on all the time. Half of all registrants in Montana are captured this way because they don't arise from Montana convictions. Okay. And we think this is an illicit attack on our statute, which is a neutral way that many other states – some 30 states have reciprocity triggers. Several others have identical statutes to ours. Counsel, now you're – And this mirrors the – Forgive me, but now you're repeating yourself, and we've got this part of your argument. So – and since you're seven and a half minutes over, I'm going to hear from opposing counsel now, okay? Thank you, Your Honor. Stand by. We'll give you a little bit more time when we come back. Good morning, Your Honors. May it please the Court. Matthew Strugar for the Plaintiff of Pele. Randall Minkus was convicted of a crime against nature for having gay sex in rural Idaho in 1994. For that crime, he served seven years of incarceration. And for that, Montana wants to force him to register as a sex offender in 2022 and for the rest of his life. The district court was well within its discretion in finding that Montana officials forcing Minkus to register in Montana for a pre-Lawrence sodomy conviction was unconstitutional. Could I get you to go to the first point, which is this looking through, right? Montana's argument, their first argument, their strongest argument is – I shouldn't say strongest, but opposing counsel certainly stressing today strongly his argument that the challenge here is really to the registration statute, not to the underlying Lawrence issue. So what is – and that that is neutral. What's your best response, please? Our best response is that Montana is responsible for enacting and enforcing its own laws. It says there's no precedent. What's your best case law precedent for this type of analysis where we look through the underlying discriminatory statute? I think the state's own cases are the best cases and those favor Minkus and not the state. Erie County Retirees Association, a county employer adopted, or maybe it was a state employer, adopted an inferior health care plan for people who are eligible for Medicare. Obviously, Medicare is age-based. When the employees claimed age discrimination, they didn't have to go challenge Medicare. They were able to say that the county's incorporation of that age-based requirement was age discrimination. Johnson v. New York, another public employer, incorporates another age-based scheme from federal law. They're the Air National Guard's mandatory retirement age. That employee didn't have to sue the Air National Guard. It was enough that the county employer had adopted it. And even Bassett v. Snyder, where Michigan, as an employer, adopted its ban on same-sex marriage as applied to employee benefits, those state employees didn't have to challenge against the same-sex marriage ban. It was enough that it was adopted and incorporated. Each of those cases shows that you can't just incorporate a discriminatory scheme from another statute and then throw up your hands and say, you know, I'm absolved of all responsibility here. But does that, does your analysis apply only to the equal protection argument or also to the substantive due process argument? Also to the substantive due process argument, Your Honor. Montana had no, there's no requirement that it do what it did. There's no requirement that it adopt other states' registration requirements. But in 2005, they decided they wanted to. They didn't used to before that. About a dozen states still don't. But when it did, Montana took responsibility for each and every law that it incorporated and that it enforced. It enforces it against Mr. Mingus. If Mr. Mingus doesn't register every time he changes residences or signs up for a new Internet account, he faces a felony punishable by five years. Every time, he has to register every time he signs up for an Internet account? That's what the Montana law says. And what else? Every time you change residences, every time you get student status. Do you have to re-register for all these things, even if you're already registered? Every time any of those things change your vehicle registration. You have to provide notice of the change of residence. Provide new information. Provide notice of, yeah. Correct, and you have to re-register, I believe it's annually. What about this question about collateral consequences or other consequences? Are there any in Montana's statute? Montana, unlike Idaho and unlike a lot of states, is still mostly what people call a first-generation law. It is mostly notification and registration. There aren't residency restrictions. There aren't employment restrictions. Can't those be imposed if they do classify on the back end? I thought so. I don't know. Let's back up to what we think we know. It's publicly available, yes? Available to employers, to landlords. Very much so. I think the requirement you were just talking about is this annual registration has to be renewed each year, and then those changes in circumstances, becoming a student, moving employers' addresses and whatnot, those have to be updated periodically, whenever they happen. Isn't that right? Within three business days, Your Honor. And then do we have in the record or in the complaint or anywhere what actually shows up on the notification website? Well, I don't think cleanly, Your Honor. I mean, we have what happened to Mr. Mangas in December of 2020 in Idaho, which was Idaho marked him as noncompliant because he tried to register when he left the state and it was in March 2020 when the sheriff's offices were closed, and so they marked him as, you know, as noncompliant. But what I'm wondering is, does the website say, this is a website about sex offenders, this is a website about people who've had certain convictions, does it say what the conviction is? I mean, what is on this website? It does say what the crime of conviction was. It does say that. It says crime against nature. And is it represented to be a group of sex offenders? This is a list of sexual offenders? Yeah, well, if you go to the Montana, I think it's the state police who run the sex offender registry. That's what it's called, the sex offender registry. It's called the sex offender registry. And it's there to notify, you know, in the district court, the state justified, you know, the basis. They said the government interest that it served was to protect the public from dangerous sex offenders. And Lawrence sort of took that out from under them. Mr. Mangas isn't. What's your response to the state's argument that because of the fact that the injunction has now been entered in Idaho, that Montana would not require him to register? Well, it's a little hypothetical. We had judgment in this case months before any preliminary injunction in Idaho. So he was off the registry. That's not my question. My question is from this point forward, as I understand what Mr. Dewhurst argued, Montana is not and will not require him to register because the injunction precludes Idaho from requiring him to register. Yeah. It's not clear from the text of the statute. We argued this in the briefs and in the motions and in opposing the state's motion to stay. It's not clear to me from the state's own registration statute that that is textually right. Now, it might be very well that Montana would do it. If the solicitor general of Montana represents to the court that Montana will not require registration, you're telling me I can't rely on that in determining mootness? Well, I think the best answer to sort of why wasn't there a stay below or what to do with that counsel. Counsel, you're evading my question. It's a very simple question. Is Montana going to require this guy to register or not? If not, we don't have a case or controversy before us, do we? Well, he has judgment. The underlying case can't be mooted. Perhaps their appeal can be mooted. But his argument is that his harm is from this point forward, and Montana says we won't require him to register. So what relief can we effectively enter that's going to change anything from the situation that exists today? Again, the situation that exists today arose many months after we already obtained judgment in a permanent injunction in this case. However, the injunction in Idaho is preliminary. The state's contesting it and engaging in discovery. Basically, it's likely to recur or not likely, but it depends on this case. In other words, it's all of a piece. It's a question of what happens in this appeal and any further appeals. Therefore, it could be if he loses somewhere up the line in Idaho that he's back in the Montana registration requirement. Yeah, even under what Mr. Dewhurst represents, Montana will do in the event of an injunction in Idaho. If Mr. Mangus doesn't succeed in Idaho, he would still have to register in Montana, and there's nothing that the Idaho court could do to sort of enjoin future administrations in Montana from requiring Mr. Mangus to register if there's not a permanent injunction in place that holds them to that. Do you want to do the merits of— why don't we start with the equal protection argument? How do you characterize what the equal protection problem is? First of all, there is some tension between the fact that the statute, even if you look through it, is only about a conviction, and now you want to look at the underlying facts. So why are we doing that? Well, two answers, Your Honor. First, Montana doesn't defend really the merits of any of the claims. I mean, Montana says there's no direct infringement here. The entire defense is that it's indirect. That's footnote one of the gray brief. So I think as soon as the court looks through, Montana has waived any right on the merits. They say they don't argue whether or not Montana law affects liberty interests or deprives Mangus of liberty interests under substantive due process or equal protection. They simply say it's because they incorporate it and enforce it in Montana they should be absolved of responsibility. So on the question of— Well, they do have an equal protection argument, which says there are no classifications under Montana law. That's the first one. But the second one is that rational basis would apply if you did an equal protection analysis. Sure. But that's what the district court did, wasn't it? Didn't it essentially do a rational basis analysis? The district court sort of found that heightened scrutiny probably should have applied, but that it didn't need to do that heightened scrutiny analysis because it failed even rational basis. We think that, especially under equal protection, heightened scrutiny should apply. That's— On what basis exactly? Under Smith-Klein v. Abbott Labs versus on the basis of Otto v. Lauder, this Court has repeatedly found that sexual orientation classifications receive heightened scrutiny. Even before that, in 2008, in Witt v. Air Force, this Court found when Lawrence rights were implicated that heightened scrutiny— But not because it's gender discrimination. I'm sorry? I said not because it's sexual orientation discrimination or, more specifically, what I understood the district court to be saying. It was because, essentially, it was differentiated between people who had different sexual acts, whatever they were. Sure. And that Lawrence implicates simply that, consensual sexual acts. I think the district court was taking sort of a Bostock approach or the concurrence in Lauder v. Lauder. Well, not at points, but not at other points. All right, go ahead. You know, it is a gender discrimination. But that's what I have difficulty looking at is gender discrimination because the Crime Against Nature statute applies to men and women. Has the Crime Against Nature statute ever been applied to heterosexual conduct that was consensual? Not that I'm aware of, Your Honor. So it seems to me, and all the briefing— I shared Judge Berzon's question because it keeps getting restated a little bit differently between the briefs and between the district court's order. But it seems to me the comparison is an 18-year-old male who had consensual sex with another man in 1994 compared to an 18-year-old male who had consensual sex of any kind with a female. Both of these sexual partners need to be 16 years old in my example. That seems to me to be to line it up. What the district court said is statutory rape. I took that as a shorthand for consensual sex with a 16-year-old. I think that's right, Your Honor. Okay, and so now Idaho has a more recent decision that opposing counsel cited, but that's a forcible rape statute. But in that case, Gonzalez versus— Gomez-Alas, Your Honor. Gomez. Is it Alas? I don't know how to pronounce it. A-L-A-S. I'm not sure how to pronounce it. Okay, we'll go with Gomez-Alas. They said specifically, I think, that you had to have a finding of— that that act was against the partner's will, the victim's will. Is that right? That's right. Or there had to be at least— There had to be— Evidence of that. Lack of affirmative consent. It doesn't have to necessarily be force, but implied consent wasn't enough. I think it says you don't have to have a showing of force, but I think it has to be against the person's will. Sure. Be that as it may. That's what I'm looking at. And so that seems to me to be a fair analysis, but could you respond to Judge Berzon's point about whether or not the— is this really gender discrimination or is there a different outcome depending upon the sexual act? Yeah. You know, I think because men can only have sex with men by oral or anal sex whilst different sex couples can have other types of sex, I think it is gender discrimination. It's sort of like saying that anyone— But men can have oral sex with women, and they haven't ever criminalized that. They've never imposed this statute where there's heterosexual sex that is oral sex or anal sex or any other kind of sex. I only see that the— and I'm looking for this, so it's an invitation to either one of you. I think that anyone found guilty of this offense, this Idaho crime against nature, has either been homosexual, engaged in homosexual activity, or if there's heterosexual activity, he has been non-consensual. I think that's right, Your Honor. Yes. But why—I mean, why isn't a district court right that in any event, even applying rational basis review, the only—it ties back some, but the only rationales they have provided, which are essentially controlling for dangerous people, doesn't rationally apply here because the activity in which this person was engaged and presumably might continue to engage has been constitutionally determined to be protective activity. And I don't know that you have to get to any heightened scrutiny there to say that your rationale of dangerous people just doesn't apply. We believe we still went on rational basis, Your Honor, and I think there's significant case law saying as much. You know, the State v. Lyman case we state from the Kansas Supreme Court says even if you just look to the sex act and not the gender of the participants, there's no rational basis post Lawrence to distinguish between those sex acts. Dover's Jindal and Dover's Caldwell out of the Eastern District of Louisiana, registration for life if you engaged in prostitution involving oral sex, no registration for vaginal sex, said there's no rational basis for distinguishing between there. Even sort of Obergefell notes the relationship between substantive due process and equal protection and ruled that there's no rational basis, you know, sort of outlawing gay marriage. So the State hasn't really shown a rational basis post Lawrence for why Mr. Menger should have to register. Because the rational basis has to at least be a legal basis, and it's not a legal basis. And Lawrence pulled the rug out from under that, Your Honor. If I could just close, Lawrence held, quote, when homosexual conduct is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination in both public and private spheres, end quote. In the recent history of this country, that criminalization has involved not just registration but incarceration, institutionalization, at times even sterilization and lobotomization. Courts can't fix those wrongs, but the district court was right to fix the wrong in this case because it's part of the same history. We asked the district court to... Before you run away, could you just speak quickly about the State constitutional provision? Are you asking us to reach it? Should we be redoing that in the first census interpreting that State's constitutional provision? Well, the district court reached it. I think that this court can, you know, affirm on any basis, and any one basis is enough to affirm a permanent injunction. So... We would only reach it then if you don't prevail on the other two provisions? Is that your position? I think that would be fine, Your Honor. All right, thank you. Thank you. Okay, we'll hear from opposing counsel for a couple of minutes, please. Is that okay? We'll finish off this argument. For others, just so you can plan, we're going to take a break after this, after we finish this argument. Go right ahead, counsel. Thank you, Your Honor. Just to respond to a couple of your questions the first time, any geographic restrictions on a registered sex offender, where they can live, where they can go, those only attach if people have certain types of risk-level designations. Right, thank you. And that was not the case with Mancos. And as far as we know, there's no record that Montana ever undertook that sort of analysis as it relates to Mancos. To Judge Tallman's point with opposing counsel, it is true that the Idaho case gives him all the relief he wants in Idaho. And I just have to say again... Say that again, I didn't hear. It's true that... The claims that he is pressing in the Idaho litigation, which you'll hear about next, that will give him all the relief he wants in Montana in terms of registration, just because... Well, if he wins. If he wins. If he wins. And so far, the district courts concluded he's likely to win at least on that claim. But how can we proceed on the basis that he's going to prevail here? We haven't decided the case in the Supreme Court. If you go to the Supreme Court, I mean, the case certainly has some substantial possibility or some possibility of coming back. I think that's correct. Therefore, it's not moot. No? Because mootness requires that there be no chance that it's going to come back. We're not trying to moot it, Your Honor. What we were trying to do is... Well, because the attacks, all of the discussion, Your Honor, is about the infirmities in Idaho's law, the perceived infirmities in Idaho's law. Not Montana's. Again, this is the past... I'm sorry, I thought you were making a mootness argument. I think Judge Tallman thought you were making a mootness argument. You're not making a mootness argument. I thought you moved to dismiss the appeal on grounds of mootness. Did you not? Well, we did, and the court denied the motion to dismiss it. We moved to stay the appeal, pending the outcome of the Idaho litigation. Okay. And we asked for that relief again in our briefing. But one other note on equal protection. It's important to note that if you're looking at the Montana law and you have to look at some incorporated statute from Idaho, it's not the crimes against nature conviction, which is a very broad statute. It's the Idaho decision to make convictions of that crime registrable. And I think you have to take into account how broad the crime against nature statute is. In the Gomez... It was non-consensual, but in the Gomez-Alez case, there was a conviction of crime against nature for that particular forcible sex act that was committed on a woman in that case. But it wasn't... There was no determination, legal determination of any forcible sex act. There was a conviction that was sustained for crime against nature. Right. And that got on the ground that it was a forcible sex act. There was no... Right. Either plea or jury determination that there was a forcible sex act. Right. And that brings me to the last point about consent. The district court looked at the records that were in this case and said, well, this must have been consensual, and therefore it has to be the type of activity that's protected by Lawrence. What we would suggest is that there's threadbare evidence in this case about that. There's some police reports from two individuals, Mangus and one of the 16-year-old boys that he had sex with, not the other one. There's nothing in the court record about consent being an issue at all. And the one thing we do know from our conversations with Idaho is that at the time in Idaho, 16 was not the age of consent. So there are questions about whether they were able to legally consent, regardless of the district court's factual... But, counsel, your registration requirement is keyed to convictions, right? Is it really your position that you would be able to look all the way through, look to police reports, and decide this person's really, essentially guilty of something he wasn't convicted of? Well, we don't think you should be looking through it all, but to the extent the district court did, we think that those findings should actually be based on... Can you just answer one question for me? Assuming we were looking at the merits of the equal protection argument in the way that the district court did, what is Idaho's rational basis for this registration requirement, for requiring this person to be put on a public website saying that he was a sex offender because he engaged in a crime against nature? What is your rational basis for that? Well, again, it's not my rational basis, and I hesitate to speak too much on Idaho's behalf. But I would think that... Montana is putting up this screen, and it says sex offender next to his name, and it says crime against nature. So crime against nature makes him a sex offender because that's what Montana is saying on its screen. Right, and as the court has made clear in intervening years, the crime against nature statute requires a finding of non-consent. And I don't think there's any evidence in the record, A, that it was non-consensual, and there's certainly legal evidence that it could... Just tell me the rational basis. The rational basis would be... What are the governmental interests in having this person exposed on a public screen as a sex offender, crime against nature? Well, first of all, Your Honor, in terms of rational basis, the court doesn't look at the particular regulatory effects on the individual. It looks at the statutory means adopted and how they relate to the legitimate government interest. This court's decision in the Navarro case makes that clear. In rational basis, that plaintiff was trying to say, look at the particularly egregious effects this has on me. But if you're in rational basis, that's not the inquiry that the court should make. It should look at the statutory means that have been adopted to effectuate the policy. Crimes against nature is a broad statute in Idaho. From what we understand, it contemplates all kinds of sexual offenses. And so if you're questioning the policy in Idaho to make that conviction registrable, again, we would suggest that's a good question for Idaho. But it's not a fundamental problem with Montana's registration. So you don't have a rational basis? You still haven't stated a rational basis. Oh, Your Honor, I think I just did. The only rational basis is, go ask Idaho. The rational basis is, Idaho has determined that convictions of this law are sexual offenses that the public should know about. And that doesn't mean that every crime against nature conviction is penalizing conduct protected by Lawrence. That's the reason. And so while it may have some outsized effects on some individuals in rational basis, the court doesn't look to that specific effect. It looks instead to the way the statute effectuates the government purpose. That's how rational basis functions. I don't think there's any further questions. Again, well over your time, we've taken you over your time. I appreciate your briefing and your patience with our questions. We'll take this case under advisement. We're going to stand in recess for about 10 minutes. Thank you.
judges: BERZON, TALLMAN, CHRISTEN